FILED'08 JUN 27 07:56USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| IRIS E. MESSINA, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 07-6235-TC |
| | ) | |
| v. | ) | OPINION AND |
| | ) | ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

Plaintiff Iris Messina ("Messina") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the following reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings.

## BACKGROUND

Aged 57 at the time of the hearing, Messina completed one year of college. Tr. 572. She

has worked as a daycare provider, secretary, and administrative assistant. Tr. 573.

Messina applied for DIB on August 13, 2002, alleging disability since January 1, 1998.

Tr.70. She cited chest pains, low back pain, ADD, insomnia, body pain, Raynaud's phenomena,

and mental disorders including anxiety. Tr. 16. She amended her onset date to March 1, 2001, at

the hearing. Tr. 610. Messina's application was denied initially and upon reconsideration. Tr.

44-51. A hearing was held before an Administrative Law Judge ("ALJ") on January 19, 2005,

and the ALJ found Messina not disabled on May 26, 2005. Tr. 11. The Appeals Council denied

Messina's request for review, Tr. 6, making the ALJ's decision the Commissioner's final

decision. 20 C.F.R. § 404.984. Messina seeks review of this determination.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five

steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520, *Bowen v.

Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity

("SGA"). If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable

physical or mental impairment" that meets the 12 month duration requirement. 20 C.F.R.

§§ 404.1509. If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a

"listed" impairment in the regulations. 20 C.F.R. § 404.1520(2). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work she is not disabled. *Id.*

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found Messina had the severe impairments of malignant neoplasm of the breast status-post surgery with chemotherapy and radiation therapy, and affective disorders at step two

in the sequential proceedings. Tr. 16, 28. At step three, the ALJ found that Messina's

impairments did not meet or equal the requirements of a listed impairment. Tr. 28.

The ALJ evaluated Messina's RFC, finding that she had the ability to lift 25 pounds frequently,

50 pounds maximum, occasionally reach overhead with the right extremity, and occasionally

climb ladders, with mild limitations in activities of daily living and social functioning, and

moderate limitations in concentrations, persistence, or pace. Tr. 26-28. The ALJ found that

Messina was able to perform her past relevant work as a child monitor at step four and therefore

found Messina not disabled. Tr. 28, 29.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359

F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts

from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing

*Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading. *Id., see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Messina contends the ALJ erred in (1) failing to credit the opinion of Dr. Richenstein, the

treating psychiatrist, (2) finding that plaintiff's anxiety condition did not meet the duration

4 - OPINION AND ORDER

requirement, and (3) failing to give clear and convincing reasons for rejecting plaintiff's

testimony.

I.      ALJ's rejection of the opinion of Dr. Richenstein, the treating psychiatrist

Messina underwent psychiatric examination and treatment by psychiatrist Dr. Richenstein

beginning July 10, 2002.  She reported difficulty with mood swings, obsessional worry,

catastrophic thinking, panic, fear, and difficulty sleeping.  Tr. 370.  She also reported feeling very

stressed in employment positions, and catastrophic worry when providing care for her

grandchildren.  Tr. 371.  Dr. Richenstein noted that claimant's affect was labile, very dramatic,

and marked by pressured speech; she also exhibited flight of ideas and loose associations and

acknowledged passive suicidal feelings.   Tr. 372.  He diagnosed claimant with Bipolar 1

disorder; Attention Deficit/Hyperactivity Disorder; Anxiety Disorder, NOS; R/O Schizoaffective

Disorder; and assigned a GAF of 40-45.  Tr. 372.  Messina continued undergoing psychiatric

evaluation and care with Dr. Richenstein, with visits in July, August, October, and December

2002 and January 2003.

On March 6, 2003, Dr. Richenstein wrote to Oregon Department of Human Services,

Disability Determination Services, on behalf of Messina.  He stated, in part:

> She struggles with significant attention deficit/hyperactivity disorder symptoms
> as well as bipolar mood disorder and a disabling social anxiety disorder.  We
> have been working on finding a combination of medications targeted at each of
> the disabling symptoms that she carries in our work together over the past eight
> months.
>
> Her mood has improved and she is not having as significant struggle
> with manic episodes of severe agitation. . . . She still struggles with  some
> degree of depression. . . . The patient also struggles with attention deficit
> disorder and is on high dose of Adderall, a psychostimulant, which helps her

5 -  OPINION AND ORDER

stay focused and function. Without it she cannot perform any activities of daily living. . . .

The patient continues to struggle also with symptoms of social anxiety disorder and agoraphobia. She rarely leaves the house without the company of her husband. When she goes to a store she is overwhelmed by all the available merchandise and it is hard for her to focus on one task. She is extremely self conscious and has the feeling that other people are looking at her, judging her and critiquing her dress, appearance, or even the manner that she walks. She is very careful not to get in anyone's way; when having to make change she uses only very large bills as she struggles with making an error with simple arithmetic. . . . This is similar to telling time and subtracting how much time it will be until later in the day when dinner will be served. She gets at an answer approximately but has a difficult time arithmetically and is overwhelmed in the process.

While Mrs. Messina has functioned at a work environment in the past, she does not have the emotional stability or mental focus to stay on task, even in a limited work environment. She is overwhelmed psychosocially by being in the company of others. She feels that her performance is scrutinized and she is overwhelmed with symptoms of anxiety and panic to the point of breaking down. She shows significant impairment in ability to use simple mathematical concepts. Her husband pays all the bills, does all the shopping, and makes major decisions in the home. . . .

Tr. 367.

The ALJ rejected the opinion of Dr. Richenstein on the basis of an asserted inconsistency

between the above-excerpted letter and both the lay witness testimony of Messina's husband, and

a medical treatment record. Tr. 19-20. The ALJ explained:

Dr. Richenstein submitted a letter dated March 6, 2003, and stated that the claimant was still struggling with significant ADHD, bipolar disorder, social anxiety disorder, and agoraphobia, and that her symptoms remained profound and debilitating. This is not consistent with his last treatment note (August 2002) which indicated that the claimant's mood had improved and she was not having significant struggling with manic episodes or severe agitation (Exhibit 10F). Nor is it consistent with the testimony of Thomas Messina, who reported that the claimant's symptoms improved within a few weeks of see[ing] Dr. Richenstein.

6 - OPINION AND ORDER

Tr. 21.

Where a treating physician's medical opinion is supported by medically acceptable

diagnostic techniques, and where the opinion is not inconsistent with other substantial evidence,

the opinion is given controlling weight.  20 C.F.R. § 404.1527(d)(2); *Holohan v. Massanari*, 246

F.3d 1195, 1202 (9th Cir. 2001).   An uncontradicted opinion of a treating doctor may be rejected

only for reasons that are clear and convincing.  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th

Cir. 2006).

> I turn first to the August 2002 treatment note.  There, Dr. Richenstein wrote:
>
> The patient has noted some improvement in her mood with the addition of
> Depakote.  She is not as irritable, angry, and there is not as much negative self
> talk.  She has felt somewhat fatigued but is adjusting to medication.  On a lower
> dose she seemed to sleep better. . . . She fatigues easily, especially with
> housework.
>
> . . . She still does not sleep, even with taking Ambien, taking three hours or
> longer to fall asleep.  She often procrastinates, putting things off until the last
> minute, and tends to obsessionally worry.
>
> MENTAL STATUS EXAM:  A casually-dressed woman.  Her affect was less
> intense.  She was able to complete sentences more fully without getting
> distracted.  She was calmer overall and less hurried in her presentation.
>
> PLAN:  Will continue present medications. . . . Follow up in the next 2-3 weeks.
> Help her adapt to current mood stability.

Tr. 368.  The ALJ stated that the fact that Dr, Richenstein reported in August 2002 that Messina's

mood improved and that she did not have severe agitation or manic episodes conflicts with the

March 2003 letter.  The conflict is not apparent in the record.  Rather, in March 2003, Dr.

Richenstein echoed what he had determined in August 2002: "Her mood has improved and she is

7 -  OPINION AND ORDER

not having as significant struggle with manic episodes of severe agitation." Further, the August 2002 treatment note indicates that Messina was undergoing treatment for bipolar I disorder, ADHD, and anxiety disorder. Tr. 368. The ALJ's stated basis for an inconsistency between these two records is simply not borne out by the record.

I turn next to the testimony of claimant's husband. He was asked to describe claimant's response to Dr. Richenstein's treatment. He stated, "[O]nce we got her on Depakote, it took away that I hate life mentality that she had every day and so now Dr. Richenstein has been great for medication." Tr. 604-05. When asked whether Dr. Richenstein prescribed Depakote from the beginning of her treatment, claimant's husband stated, "[B]oy, there ha[ve] been so many I just don't remember exactly when it started. But I know once it did, it was within weeks I could see the difference." Tr. 605.

The ALJ's stated basis for the inconsistency between Mr. Messina's testimony and the March 2003 letter is Mr. Messina's recollection that claimant showed improvement within a few weeks of treatment with Dr. Richenstein. This fact aligns with Dr. Richenstein's statement in the March 2003 letter indicating that plaintiff's mood had improved. Further, it does not controvert Dr. Richenstein's opinion that claimant nonetheless suffered the debilitating conditions described in the March 2003 letter. Mr. Messina did not state that claimant had been cured of any condition; on the contrary, he described ongoing health concerns. Further, improvement in claimant's attitude is not inconsistent with Dr. Richenstein's statement that "[h]er mood has improved and she is not having as significant struggle with manic episodes of severe agitation. . . . She still struggles with some degree of depression." Tr. 367.

8 - OPINION AND ORDER

The Commissioner states that the asserted inconsistencies present "ambiguities in the medical evidence," which the ALJ is called to resolve. I disagree. The record does not present an "ambiguity" that requires interpretation by the ALJ. Rather, the ALJ's bases for rejecting the opinion of Dr. Richenstein are not clear and convincing, and the ALJ therefore erred.

II.      ALJ's finding that plaintiff's anxiety condition did not meet the duration requirement

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520.(a)(4)(ii). This finding considers "medical severity" only. *Id.* An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c), *see also* 20 C.F.R. § 404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509. The period must begin prior to the claimant's date last insured. 20 C.F.R. § 404.101. In this case, the date last insured is September 30, 2001. Tr. 27.

The ALJ found that Messina's anxiety disorder did not meet the duration requirement because it did not last for twelve consecutive months and was "largely situational." Tr. 18. In particular, the ALJ reasoned:

> Of import here is that while the claimant was described as extremely anxious as well as having severe insomnia on September 10, 2001, by early December she was not agitated, was calm, bright, and alert as well as getting along quite well . . . . *The condition was largely situational being related to undergoing chemotherapy and radiation therapy . . . to which the claimant responded well. Thus, the condition did not last twelve consecutive months.*

Tr. 18 (emphasis added).

9 -  OPINION AND ORDER

The ALJ's determination that Messina's anxiety was "largely situational" is not supported by substantial evidence in the record.  On March 10, 2001, Dr. Merrick examined plaintiff and reported, "[s]he feels wound up and has continuous thoughts racing through her head regarding various issues . . . Suicidal thoughts pop up at times and have in the past when she has a hard time unwinding."  Tr. 215.  In his note. Dr. Merrick recites that Messina was then undergoing cancer treatment, but describes her history of agitation as "long-term."  Tr. 215.

On September 10, 2001, Dr. Merrick examined plaintiff again and wrote:

> In with husband, Tom, stating that she is feeling extremely wound up, tense, anxious.  She has not been able to sleep more than two hours for the last several weeks despite taking Ambien 10 mg at h.s. and sometimes repeating it in two hours. . . . She does feel tense, wound up, anxious.  She has considered suicide several times recently because she is just too agitated.

Tr. 206.  Dr. Merrick did not relate the anxiety to her cancer treatment; rather he noted only that her cancer therapy left her fatigued.  Tr. 206.

On November 9, 2001, Dr. Merrick examined Messina and stated:

> She admits she is very anxious.  She is depressed and cries at times.  She has a very difficult time with concentrating and focusing and does better when she is on Dexedrine Spansules at 15 mg b.i.d.  She developed palpitations prior to her chest pain and dyspnea for which she was seen in Urgent Care and stopped Dexedrine about four days ago and has had a worse time since then; it also seems to help with anxiety.

Tr. 200.  Again, Dr. Merrick mentioned that Messina had undergone cancer treatment but did not describe her psychiatric symptoms as situational or treatment-related.  Tr. 200.  She remained diagnosed with anxiety disorder and chronic depression.  Tr. 200.

In December 2001, Messina discontinued Dexedrine, which had "seem[ed] to help with anxiety," Tr. 200, and experienced agitation, depression, and lack of focus, Tr. 198.  In January

10 -  OPINION AND ORDER

2002, Dr. Merrick reported that Messina was continuing Ambien and Dexedrine treatment.   Tr.

195.  In April 2002, Dr. Merrick again reported, "She is anxious and moderately depressed."  Tr.

192.  No connection between the anxiety and Messina's cancer was drawn.

     In August, 2002, Dr. Richenstein wrote that Messina had "some improvement" in her

mood after taking Depakote but still suffered fatigue and required medication to sleep.  She

continued to be diagnosed with anxiety disorder, along with bipolar I disorder and ADHD.  Tr.

368.  Again, no relationship between the anxiety and Messina's cancer was stated.

     The medical record resumes on April 3, 2003.  At that point, Messina was diagnosed with

mixed anxiety disorder, along with bipolar 1 disorder and ADHD.  Tr. 501.  Dr. Richenstein

wrote:

> The patient continues to struggle with anxiety. She is unable to go into public
> places or into crowds, feeling overwhelmed.  In going to a grocery store there
> are too many things to choose from and she is befuddled.  She is also very
> apologetic and fears that she would make a mistake. . .
>
> The patient talked about going to the dentist and being overwhelmed with
> anxiety.  They had to give her medication before going last time. . .
>
> MENTAL STATUS EXAM:  A well-groomed casually-dressed woman.  Her
> speech was pressured, hurried, she was emotionally labile, overwhelmed,
> apologetic, with intense negative feelings that resolved just as quickly.
>
> PLAN:  In discussing her current symptoms, anxiety is a problem but perhaps
> disorganized thinking is also a part of her presentation and picture. . . .
> Continue to work on disabling symptoms of mental illness by the current
> treatment plan.

Tr. 501.

     On this record, I cannot conclude that the ALJ's determination is supported by substantial

evidence.  The ALJ's conclusion that Messina's anxiety is situational and related to her cancer

11 -  OPINION AND ORDER

treatment does not reflect the conclusion of Dr. Richenstein or Dr. Merrick, physicians who treated Messina during the relevant period. Neither point to Messina's cancer treatment as an etiological factor, nor does either indicate that her anxiety problems would or did improve upon termination of cancer treatments. Rather, the record indicates that Messina's anxiety continued in 2003. The ALJ's determination lacks substantial evidence.

Reversal and remand for further proceedings is warranted. Messina's remaining specification of error concerns a credibility finding that depended in part on the opinion of Dr. Richenstein. Thus, the court's determination that the ALJ erred in rejecting the opinion of Dr. Richenstein may implicate the step 3 determination upon remand, as well as the credibility determination upon remand. Because the ALJ considers Messina's statements about her own impairments when making an RFC assessment only after the step 3 determination, and because the credibility determination will be revised in light of the court's opinion, I do not address that specification further at this point.

//

//

//

//

//

//

## CONCLUSION

12 -  OPINION AND ORDER

The Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

DATED this 26th day of June, 2008.

Thomas M. Coffin
United States Magistrate Judge

13 - OPINION AND ORDER